# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**MICHAEL SEBASTIAN** | **No. 20-cr-10170-DJC** |

## DEFENDANT'S MOTION TO DISMISS THE INDICTMENT AND MEMORANDUM IN SUPPORT

Defendant Michael Sebastian respectfully moves this Court to dismiss the indictment charging him with violations of 18 U.S.C. §§ 2423 and 1591. Mr. Sebastian submits this motion pursuant to Rule 12(b) of the Federal Rules of Criminal Procedure and the Fifth and Sixth Amendments of the United States Constitution. The indictment must be dismissed for several reasons. First, the charges under section 2423 are multiplicitous of the charges under section 1591, and the government must choose which statute to proceed under to allow Mr. Sebastian a fair trial. Second, the Foreign Commerce Clause does not give Congress the authority to reach the alleged conduct here, which occurred entirely within the country of Laos. And third, to the extent the government intends to prove that Mr. Sebastian engaged the alleged victims in a "commercial sex act," that term does not encompass Mr. Sebastian's alleged actions as a matter of law, and in the alternative, the statutory definition is void for vagueness.

## I.     Background

The indictment charges six counts against Mr. Sebastian for alleged criminal activity in Laos concerning three different minors. *See* Indictment, Aug. 27, 2020, dkt. #23. It states that Minor A was born in 2005; Minor B was born in 2002; and Minor C was born in 2001. In summary, the charging document alleges that Mr. Sebastian is a citizen or national of the United States who

1

traveled in foreign commerce and resided in Laos, where he engaged the three minors in commercial sex acts. As stated in the complaint affidavit, the government seeks to prove at trial that Mr. Sebastian housed several minors at his home in Laos, and "while they were living with SEBASTIAN, they would be 'credited' certain amounts toward their monthly rent by performing massages on SEBASTIAN. According to the complainant, these massages included masturbating SEBASTIAN." Complaint Affidavit, Submitted by FBI Special Agent Brian O'Sullivan, July 7, 2020, dkt. #1-1, at 2.

Counts One, Two, and Three of the indictment charge violations of 18 U.S.C. § 2423(c) and (e) (transportation of minors) with regard to each minor respectively. Counts Four, Five, and Six charge violations of 18 U.S.C. § 1591(a)(1), (b)(2), and (c) (sex trafficking of children) and 18 U.S.C. § 1596(a)(1) and (2) (jurisdiction in certain trafficking offenses) with regard to each minor respectively. Count Four additionally charges a violation of 18 U.S.C. § 1591(b)(1) with regard to Minor A. All six counts include a charge of 18 U.S.C. § 3238 (offenses not committed in any district), which concerns venue.

The relevant statutory provisions state as follows. With respect to Counts One, Two, and Three:

> **(c) Engaging in illicit sexual conduct in foreign places.**--Any United States citizen or alien admitted for permanent residence who travels in foreign commerce or resides, either temporarily or permanently, in a foreign country, and engages in any illicit sexual conduct with another person shall be fined under this title or imprisoned not more than 30 years, or both.

18 U.S.C. § 2423(c).

> **(e) Attempt and conspiracy.**--Whoever attempts or conspires to violate subsection (a), (b), (c), or (d) shall be punishable in the same manner as a completed violation of that subsection.

*Id.* § 2423(e).

**(f) Definition.**--As used in this section, the term "illicit sexual conduct" means--
**(1)** a sexual act (as defined in section 2246) with a person under 18 years of age that would be in violation of chapter 109A if the sexual act occurred in the special maritime and territorial jurisdiction of the United States;
**(2)** any commercial sex act (as defined in section 1591) with a person under 18 years of age; or
**(3)** production of child pornography (as defined in section 2256(8)).

*Id.* § 2423(f).

As for Counts Four, Five, and Six:

**(a)** Whoever knowingly--
**(1)** in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person . . .
knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

**(b)** The punishment for an offense under subsection (a) is--
**(1)** if the offense was effected by means of force, threats of force, fraud, or coercion described in subsection (e)(2), or by any combination of such means, or if the person recruited, enticed, harbored, transported, provided, obtained, advertised, patronized, or solicited had not attained the age of 14 years at the time of such offense, by a fine under this title and imprisonment for any term of years not less than 15 or for life; or
**(2)** if the offense was not so effected, and the person recruited, enticed, harbored, transported, provided, obtained, advertised, patronized, or solicited had attained the age of 14 years but had not attained the age of 18 years at the time of such offense, by a fine under this title and imprisonment for not less than 10 years or for life.

**(c)** In a prosecution under subsection (a)(1) in which the defendant had a reasonable opportunity to observe the person so recruited, enticed, harbored, transported, provided, obtained, maintained, patronized, or solicited, the Government need not prove that the defendant knew, or recklessly disregarded the fact, that the person had not attained the age of 18 years.

*Id.* § 1591(a)-(c).

**(3)** The term "commercial sex act" means any sex act, on account of which anything of value is given to or received by any person.

*Id.* § 1591(e)(3).

**(a) In general.**--In addition to any domestic or extra-territorial jurisdiction otherwise provided by law, the courts of the United States have extra-territorial jurisdiction over any offense (or any attempt or conspiracy to commit an offense) under section 1581, 1583, 1584, 1589, 1590, or 1591 if--

**(1)** an alleged offender is a national of the United States or an alien lawfully admitted for permanent residence (as those terms are defined in section 101 of the Immigration and Nationality Act (8 U.S.C. 1101)). . .

**(2)** an alleged offender is present in the United States, irrespective of the nationality of the alleged offender.

*Id.* § 1596(a)(1)-(2).

Finally, concerning each count:

The trial of all offenses begun or committed upon the high seas, or elsewhere out of the jurisdiction of any particular State or district, shall be in the district in which the offender, or any one of two or more joint offenders, is arrested or is first brought; but if such offender or offenders are not so arrested or brought into any district, an indictment or information may be filed in the district of the last known residence of the offender or of any one of two or more joint offenders, or if no such residence is known the indictment or information may be filed in the District of Columbia.

*Id.* § 3238.

## II.    Legal Standards

The Fifth Amendment to the Constitution requires that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury[.]" U.S. Const. amend. V. The Sixth Amendment further mandates that an accused person has the right "to be informed of the nature and cause of the accusation[.]" U.S. Const. amend VI. To satisfy these constitutional requirements, "[t]he indictment should be specific enough to notify the defendant of the nature of the accusation against him and to apprise the court of the facts alleged." *United States v. Brown*, 295 F.3d 152, 154 (1st Cir. 2002). The allegations must be sufficient to allow the defendant to prepare a defense and plead double jeopardy in any future prosecution for the same offense. *United States v. Guerrier*, 669 F.3d 1, 3 (1st Cir. 2011). In reviewing the sufficiency of an indictment, the court must accept its allegations as true. *Id.* at 3-4.

### III.    Argument

### A.  The alleged violations of section 2423(c) are multiplicitous of the alleged violations of section 1591(a)(1), and the government must proceed under one statute to allow Mr. Sebastian a fair trial.

The Double Jeopardy Clause of the Fifth Amendment states that no person shall be "subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. "An indictment countervails this principle when it charges a defendant in more than one count with committing a single offense." *United States v. Lilly*, 983 F.2d 300, 302 (1st Cir. 1992). "A prosecution is multiplicitous when the government charges a defendant twice for what is essentially a single crime." *United States v. Chiaradio*, 684 F.3d 265, 272 (1st Cir. 2012). Federal Rule of Criminal Procedure 12(b)(3)(B)(ii) requires that a defense or objection due to "a defect in the indictment" for "charging the same offense in more than one count (multiplicity)" to be raised by pretrial motion. Fed. R. Crim. P. 12(b)(3)(B)(ii).

"[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932). "The same-elements test, sometimes referred to as the '*Blockburger*' test, inquires whether each offense contains an element not contained in the other; if not, they are the 'same offence' and double jeopardy bars additional punishment and successive prosecution." *United States v. Dixon*, 509 U.S. 688, 696 (1993). Where "a claim of multiplicity is premised on an indictment alleging several violations of a single statutory provision, an inquiring court must determine whether there is a sufficient factual basis to treat each count as separate." *United States v. Stefanidakis*, 678 F.3d 96, 100-01 (1st Cir. 2012).

The indictment against Mr. Sebastian violates both the Fifth Amendment and Rule 12(b)(3)(B)(ii) because Counts One, Two, and Three, which charge violations of section 2423(c), are multiplicitous of Counts Four, Five, and Six, which charge violations of section 1591(a)(1). The two groups of counts allege identical factual conduct, and neither statutory provision contains an element that the other does not. Absent a distinction, the Double Jeopardy Clause bars the government from proceeding to trial on the current indictment.

To the extent the government intends to pursue a theory that Mr. Sebastian engaged the alleged victims in a "commercial sex act," the relevant elements of each statutory provision are as follows:

Section 2423(c)

1. "Any United States citizen or alien admitted for permanent residence"

2. "who travels in foreign commerce or resides, either temporarily or permanently, in a foreign country"

3. "and engages in any illicit sexual conduct with another person"
   - As defined under section 2423(f)(2), "illicit sexual conduct" includes "any commercial sex act (as defined in section 1591) with a person under 18 years of age"

Section 1591(a)(1)

1. "Whoever knowingly in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States"
   - The indictment includes section 1596(a)(1), which states that "the courts of the United States have extra-territorial jurisdiction over any offense . . . under section . . . 1591 if an alleged offender is a national of the United States"

2. "recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person knowing, or, except where the act constituting the violation . . . is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act"
   - Section 1591(e)(3) defines "commercial sex act" as "any sex act, on account of which anything of value is given to or received by any person"

As the color-coding hopefully makes clear, the elements of each statutory provision are the same in sum and substance. *See Brown v. Ohio*, 432 U.S. 161, 164 (1977) ("It has long been understood that separate statutory crimes need not be identical either in constituent elements or in actual proof in order to be the same within the meaning of the constitutional prohibition [of double jeopardy]."); *see also Texas v. Cobb*, 532 U.S. 162, 173 (2001) ("[T]he definition of an 'offense' is not necessarily limited to the four corners of a charging instrument."). In simple terms, Counts One, Two, and Three require the government to prove beyond a reasonable doubt that Mr. Sebastian is a U.S. citizen who traveled in foreign commerce or resided in Laos and engaged in a sex act with each minor in exchange for something of value. Counts Four, Five, and Six likewise require the government to prove that Mr. Sebastian knowingly affected foreign commerce and caused each of the minors to engage in a sex act in exchange for something of value.

Mr. Sebastian notes that section 1591(a)(1) includes the language "*recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits* by any means a person knowing, or, except where the act constituting the violation . . . is advertising, in reckless disregard of the fact, that *means* of force, threats of *force, fraud, coercion* described in subsection (e)(2), or any combination of such *means* will be *used to cause the person to engage* in a commercial sex act." 18 U.S.C. § 1591(a)(1) (emphasis added). The provision lays out various means of committing a single element – causing a person to engage in a commercial sex act. As the Supreme Court explained in *Mathis v. United States*, 579 U.S. 500 (2016), a statute could list various ways of committing a crime, but "that kind of list merely specifies diverse *means* of satisfying a single element of a single crime – or otherwise said, spells out various factual ways of committing some component of the offense – a jury need not find (or the defendant admit) any particular item[.]" *Id.* at 506 (emphasis added). Here, the Court would not require the jury to

unanimously agree on any one way that Mr. Sebastian allegedly engaged one the minors in a commercial sex act, it would require the jury to agree only that he did involve a minor in a commercial sex act. This is the same element that is required under section 2423(c).[1] The government would proceed on the same proof of facts and need not prove any additional element to satisfy either statutory provision. Each factual showing for each minor would satisfy either count concerning that minor. This falls squarely within the prohibition of the Double Jeopardy Clause.

"[W]hen a multiplicity is discovered prior to trial, the Court has discretion to either require the Government to elect on which count it will proceed or to allow both counts to proceed to trial and dismiss one prior to sentencing. . . Additionally, the Government can seek a superseding indictment that cures the multiplicity." *United States v. Widi*, 697 F. Supp. 2d 140, 145 (D. Me. 2010) (internal citations omitted). To be sure, "[r]equiring election is one option, but not the only option; the court may, for example, simply vacate both the conviction and the sentence [after trial] as to all but one count, essentially merging the offending counts." *United States v. Pires*, 642 F.3d 1, 16 (1st Cir. 2011).

In this case, the Court should require the government to elect whether to proceed on Counts One, Two, and Three, or on Counts Four, Five, and Six. *See Pierce v. United States*, 160 U.S. 355, 356 (1896) ("The question whether the prosecution should be compelled to elect [upon which count of the indictment it would proceed] was a matter purely within the discretion of the court."). The allegations against Mr. Sebastian involves sexual conduct with minors, among the most sensitive topics that can be presented to a jury. The government should be ordered to elect one

---

[1] Should the Court disagree with this analysis, it could alternatively find that section 2423(c) is a lesser-included offense of section 1591(a)(1). *See Schmuck v. United States*, 489 U.S. 705, 716 (1989) ("Under [the 'elements'] test, one offense is not 'necessarily included' in another unless the elements of the lesser offense are a subset of the elements of the charged offense."). Mr. Sebastian reserves the right to request a lesser-included jury instruction at a later date if the case proceeds to trial. *See United States v. Nur*, 799 F.3d 155, 158 (1st Cir. 2015).

statutory provision where it has charged "a single offense as an offense multiple times, in separate counts, when in law and fact, only one crime has been committed." *United States v. Chacko*, 169 F.3d 140, 145 (2d Cir. 1999).

The multiplicitous indictment is prejudicial because it gives the impression that Mr. Sebastian committed multiple crimes, when in fact, the offense conduct involves only one, and he could be sentenced only for one offense. *See, e.g.*, *United States v. Langford*, 946 F.2d 798, 802 (11th Cir. 1991) ("[A] multiplicitous indictment may improperly prejudice a jury by suggesting that a defendant has committed several crimes – not one."); *United States v. Reed*, 639 F.2d 896, 904 (2d. Cir. 1981) ("The vice in multiplicity of charges is that it may lead to multiple sentences for the same offense and may improperly prejudice a jury by suggesting that a defendant has committed not one but several crimes."); *United States v. Carter*, 576 F.2d 1061, 1064 (3d Cir. 1978) ("[A multiplicitous indictment] may prejudice the jury against the defendant by creating the impression of more criminal activity on his part than in fact may have been present."); *United States v. Ketchum*, 320 F.2d 3, 7 (2d Cir. 1963) ("The reasons for requiring the Government to elect among counts in some cases are . . . primarily those of promoting the order and efficiency of the trial and avoiding the risk that 'the prolix pleading may have some psychological effect upon a jury by suggesting to it that defendant has committed not one but several crimes.'" (quoting *United States v. Mamber*, 127 F. Supp. 925, 927 (D. Mass. 1955))).

A curative jury instruction would be insufficient to remove the taint of a multiplicitous indictment because "[o]nce such a message [of more criminal activity than in fact occurred] is conveyed to the jury, the risk increases that the jury will be diverted from a careful analysis of the conduct at issue,' and will reach a compromise verdict or assume the defendant is guilty on at least

some of the charges." *United States v. Johnson*, 130 F.3d 1420, 1426 (10th Cir. 1997) (quoting *United States v. Clarridge*, 811 F. Supp. 697, 702 (D.D.C. 1992)).

Because the indictment contains multiplicitous counts, the Court should order the government to elect one statutory provision under which to proceed to trial. The Constitution mandates Mr. Sebastian a fair trial, and the indictment as it stands substantially risks prejudicing the jury against him.

### B. Congress does not have the authority to regulate alleged conduct that occurred entirely in Laos and did not affect foreign commerce.

The indictment alleges that Mr. Sebastian is a United States citizen or national who "did travel in foreign commerce and reside, temporarily and permanently, in Laos," where he is accused of engaging in illicit sexual conduct with three different minors. Indictment at 1. Each of the counts in the indictment includes a charge that requires as an element an effect on foreign commerce. *See* 18 U.S.C. § 2423(c) (criminalizing a U.S. citizen "who travels in foreign commerce" and engages in illicit sexual conduct); *id.* § 1591(a)(1) (criminalizing "Whoever knowingly – in or affecting interstate commerce" commits conduct to cause a minor to engage in a commercial sex act). Accepting only for the purpose of this motion that Mr. Sebastian did give rent credits to minors who performed sexual massages upon him, that conduct, nor Mr. Sebastian's travel to Laos, affected foreign commerce to come within Congress's reach under the Commerce Clause. As a result, the indictment must be dismissed.

The Commerce Clause authorizes Congress "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. Const. art. I, § 8, cl. 3. Under its original meaning, "commerce" meant "selling, buying, and bartering, as well as transporting for these purposes." *United States v. Lopez*, 514 U.S. 549, 585 (1995) (Thomas, J., concurring). The Foreign Commerce Clause therefore gave Congress the power to regulate trade or "intercourse"

10

with foreign countries. *Id.* at 553 (citing *Gibbons v. Ogden*, 9 Wheat. 1, 189-90 (1824)). With respect to "interstate commerce," the Supreme Court has identified three categories of activity that Congress has the authority to regulate under its commerce power: (1) "the use of the channels of interstate commerce;" (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce;" and (3) "those activities having a substantial relation to interstate commerce, *i.e.*, those activities that substantially affect interstate commerce." *Id.* at 558-59 (internal citations omitted). In Commerce Clause challenges to section 2423(c) and 1591(a)(1), courts have adopted this framework for the Foreign Commerce Clause as well. *See, e.g.*, *United States v. Baston*, 818 F.3d 651, 668 (11th Cir. 2016); *United States v. Bollinger*, 798 F.3d 201, 215 (4th Cir. 2015); *United States v. Pendleton*, 658 F.3d 299, 308 (3d Cir. 2011).

Turning first to section 2423, the provision is divided into three parts. Subpart (a) criminalizes "[a] person who knowingly transports an individual who has not attained the age of 18 years in interstate or foreign commerce . . . *with intent* that the individual engage in prostitution or any sexual activity for which any person can be charged with a criminal offense." 18 U.S.C. § 2423(a) (emphasis added). Subpart (b) criminalizes, *inter alia*, "a United States citizen . . . who travels in foreign commerce, *with a motivating purpose* of engaging in any illicit sexual conduct with another person." *Id.* § 2423(b) (emphasis added). Both subparts contain express intent requirements and require that the government prove that the defendant held such intent while traveling in interstate or foreign commerce, *i.e.*, while using channels and instrumentalities of interstate or foreign commerce.

As the Sixth Circuit has opined, because subpart (c) – the provision Mr. Sebastian is charged under – has no similar intent requirement while the defendant "travels in foreign commerce or resides, either temporarily or permanently, in a foreign country," *id.* § 2423(c), the

provision does not meet the first two *Lopez* categories. Although the Sixth Circuit's analysis concerned only noncommercial sex acts, the reasoning similarly applies to commercial sex acts:

> And subpart (c) is different. The government need only prove that a citizen *at one point* "travel[ed] in foreign commerce" – with no unlawful intent whatsoever—and then committed the regulated, noncommercial act. Indeed, since 2013, the government can just prove that the citizen "resides, either temporarily or permanently, in a foreign country" before committing the act. That's not regulating the channels of, or people in, commerce; it's regulating purely intracountry conduct – *after* the lawful traveling in commerce has ended. It thus seems to us doubtful that *Lopez* categories 1 and 2 suffice to uphold § 2423(c) against al-Maliki.

*United States v. Al-Maliki*, 787 F.3d 784, 792 (6th Cir. 2015) (determining that defendant forfeited his Commerce Clause challenge and it failed plain-error review). Absent an intent requirement in subpart (c), the first two *Lopez* categories do not encompass noncommercial or commercial sex acts on foreign soil because those acts are divorced from what the first two categories aim to regulate – channels and instrumentalities of commerce. It cannot be that the Foreign Commerce Clause gives Congress a general international police power to regulate *any* act that occurs at some point after, separate, and apart from international travel.

The Sixth Circuit went on to conclude that at least with respect to noncommercial conduct, subpart (c) similarly does not satisfy the third *Lopez* category, "substantially affect . . . commerce." *Lopez*, 514 U.S. at 559. The court stated, "Congress's failure to even try to show the aggregate effect of noncommercial sexual activity on foreign commerce highlights its lack of power here. *See* H.R. Rep. No. 108–66 (2003)." *Al-Maliki*, 787 F.3d at 793; *see also United States v. Reed*, No. 15-188, WL 3208458, at *13 (D.D.C. July 27, 2017) (concluding that Congress does not have the power under the Commerce Clause to regulate noncommercial sex acts in a foreign country).

While the Sixth Circuit did not address the question of whether commercial sex acts could meet the third *Lopez* category, under a previous iteration of the statute, the Ninth Circuit addressed the issue and concluded that such acts are within the ambit of the Foreign Commerce Clause. *See*

*United States v. Clark*, 435 F.3d 1100, 1115 (9th Cir. 2006), *overruled on other grounds by United States v. Pepe*, 895 F.3d 679, 681-82 (9th Cir. 2018); *see also id.* at 1116 (also concluding that such conduct could be regulated as within a channel of commerce). The Ninth Circuit reached this conclusion, however, by adopting a less-exacting form of the third *Lopez* standard for application in the foreign commerce context, "view[ing] the Foreign Commerce Clause independently from its domestic brethren." *Id.* at 1116. That departure from *Lopez* was unwarranted considering the historical significance of the *Lopez* framework and the text of the Commerce Clause.

This Court should rely upon the Supreme Court's *Lopez* decision, which concerned intrastate commerce, but more generally, provided a fulsome standard for how to determine whether conduct "substantially affect[s]" commerce. *Lopez*, 514 U.S. at 559. The Supreme Court identified these four factors in *United States v. Morrison*, 529 U.S. 598, 610-12 (2000). The Court should inquire:

> (1) whether the statute regulates economic or commercial activity; (2) whether the statute contains an 'express jurisdictional element' that limits the reach of its provisions; (3) whether Congress made findings regarding the regulated activity's impact on interstate commerce; and (4) whether 'the link between [the regulated activity] and a substantial effect on interstate commerce was attenuated.'

*United States v. Morales-de Jesus*, 372 F.3d 6, 10 (1st Cir. 2004) (citing *Morrison*, 529 U.S. at 610-12.

Section 2423(c) fails the fourth *Lopez* factor. With respect to Mr. Sebastian, his alleged conduct was within the country of Laos at his residence there, and there was no exchange of goods, let alone a transaction that could impact commerce between the United States and Laos. The Supreme Court warned in *Lopez* that "[d]epending on the level of generality, any activity can be looked upon as commercial." *Id.* at 565. The alleged conduct – engaging in a sexual massage with a minor for nominal rent credits – is more aptly considered "non-economic, violent criminal

conduct." *Reed*, WL 3208458, at *12 (quoting *Morrison*, 529 U.S. at 610-11, 617). The alleged acts were not transnational by any stretch. There was no movement involved, so the alleged acts could not have affected the market for child trafficking. The regulation of sexual violence occurring within the territory of another country is the province of the country where it occurs. *Cf. id.* at *13 ("[T]he court finds itself with no persuasive answer as to why Congress can criminalize quintessentially local conduct that occurs abroad when it lacks authority to criminalize that exact same conduct at home.").

This reasoning also applies to section 1591(a)(1). The provision is targeted to combat "sex *trafficking* of children by force, fraud, or coercion," but the government's allegations do not involve Mr. Sebastian trafficking or transporting any of the alleged minors into or out of Laos. *See generally*, Complaint Affidavit. Therefore, there is no alleged use of channels or instrumentalities of foreign commerce to allegedly exploit the minors. Nor is the third *Lopez* factor satisfied by this provision because, as explained with respect to section 2423, alleged sex acts occurring exclusively within foreign territory have no effect on commerce. The Eleventh Circuit determined in *Evans* that sex trafficking occurring within the bounds of a domestic or foreign state still has "the capacity when considered in the aggregate with similar conduct by others, to frustrate Congress's broader regulation of interstate and foreign economic activity." *Evans*, 476 F.3d at 1179; *see also Baston*, 818 F.3d at 668-69. This analysis is toothless and should not be adopted by this Court. The Foreign Commerce Clause makes clear that it authorizes Congress only to regulate commerce between the United States and a foreign country. If it is read to allow regulation of conduct even if it is exclusive to a foreign country, the Clause holds no meaning.

In similar cases, the government has invoked the Necessary and Proper Clause as a source of congressional authority to regulate the conduct at issue, particularly through section 2423(c).

*See, e.g.*, *United States v. Rife*, 33 F. 4th 838, 842 (6th Cir. 2022); *Reed*, WL 3208458, at *5. The government has taken the position that Congress had the authority to promulgate the statute as "necessary and proper" to the implementation of the Optional Protocol to the Convention on the Rights of the Child on the Sale of Children, Child Prostitution and Child Pornography ("Optional Protocol"), *adopted* May 25, 2000, T.I.A.S. No. 13, 095, 2171 U.N.T.S. 227, to which the United States is a party.

Article II of the Constitution authorizes the President to make treaties with the advice and consent of the Senate. U.S. Const. art. II, § 2, cl. 2. The Necessary and Proper Clause confers on Congress the "Power . . . To make all Laws which shall be necessary and proper for carrying into Execution" such treaties. U.S. Const. art. I, § 8, cl. 18; *see Neely v. Henkel*, 180 U.S. 109, 121 (1901). "[I]n determining whether the Necessary and Proper Clause grants Congress the legislative authority to enact a particular federal statute, [the Supreme Court] looks to see whether the statute constitutes a means that is rationally related to the implementation of a constitutionally enumerated power." *United States v. Comstock*, 560 U.S. 126, 134 (2010).

The Optional Protocol calls on State Parties to "prohibit the sale of children, child prostitution and child pornography." Optional Protocol, art. 1. It requires each State Party to ensure that certain enumerated offenses, whether committed at home or abroad, are covered by the State Party's laws. *See id.* art. 2. The enumerated offenses are: (1) "[t]he offering, delivering or accepting, by whatever means, of a child for the purpose of" sexual exploitation, organ transfers for profit, or forced labor; (2) "[i]mproperly inducing consent, as an intermediary, for the adoption of a child"; (3) "[o]ffering, obtaining, procuring or providing a child for child prostitution"; or (4) "[p]roducing, distributing, disseminating, importing, exporting, offering, selling or possessing for the above purposes child pornography." The Optional Protocol obligates State Parties to "adopt or

strengthen, implement and disseminate, laws, administrative measures, social policies and programmes to prevent the offences referred to." *Id.* art. 9(1).

In *Reed*, the District Court for the District of Columbia determined that "it was an overreach of Congress's authority under the Necessary and Proper Clause" to pass section 2423(c). *Reed*, WL 3208458, at *16. In that case, the conduct involved the defendant's alleged molestation of his child while he resided in the Philippines. *Id.* at *17. The court reasoned, "First, allowing Section 2423(c) to stand as implementing the Optional Protocol risks construing the treated to reach a topic on which the President may lack authority to negotiate: domestic matters of another country." *Id.* "Second, treating Section 2423(c) as implementing legislation would essentially permit Congress to reserve for itself a portion of the Treaty Power by allowing it to expand the scope of the Optional Protocol to regulate conduct the treaty neither demands no authorizes and which Congress lacks independent power to regulate." *Id.* at *18.

The conduct alleged in *Reed* bears similarities to the conduct at issue here – it allegedly occurred exclusively in Laos within Mr. Sebastian's household. This conduct is better categorized as a domestic issue under Laotian authority, beyond the scope of the President's treaty negotiating authority and congressional reach.

Because Congress does not have the authority to regulate illicit sexual activity occurring in another country through the Foreign Commerce Clause or the Necessary and Proper Clause, the indictment must be dismissed.

**C. The alleged conduct did not constitute a "commercial sex act" because the allegations do not involve intercourse; in the alternative, the definition of that term is void for vagueness.**

All six counts require the government to prove beyond a reasonable doubt that Mr. Sebastian engaged a minor in a "commercial sex act." Both section 2423(c) and section 1591(a)(1)

16

rely on the definition of a "commercial sex act" under section 1591(e)(3), which states, "The term 'commercial sex act' means any sex act, on account of which anything of value is given to or received by any person." 18 U.S.C. § 1591(e)(3). The indictment should be dismissed because a "sex act" involves mutual genital contact or intercourse, or contact between the mouth and genitalia, and there is no allegation that Mr. Sebastian engaged in such contact with the alleged minor victims. *See generally,* Complaint Affidavit. Federal Rule of Criminal Procedure 12(b) provides for a defendant to move to dismiss an indictment for defects in the indictment, including lack of specificity and failure to state an offense. *See* Fed. R. Crim. P. 12(b)(2), 12(b)(3)(B).

Alternatively, the indictment should be dismissed because the section 1591(e)(3) is unconstitutionally vague and does not put Mr. Sebastian on sufficient notice of the crime alleged to be able to prepare his defense at trial.

Section 2423(c) criminalizes a U.S. citizen who travels in foreign commerce or resides in a foreign country and "engages in any illicit sexual conduct with another person." 18 U.S.C. § 2423(c). "Illicit sexual conduct" is defined in three ways under the statute. The allegations in the complaint appear to implicate the second definition ("commercial sex act"), but the first definition provides context as well:

> **(f) Definition.**--As used in this section, the term "illicit sexual conduct" means--
>
> **(1)** a sexual act (as defined in section 2246) with a person under 18 years of age that would be in violation of chapter 109A if the sexual act occurred in the special maritime and territorial jurisdiction of the United States;
> **(2)** any commercial sex act (as defined in section 1591) with a person under 18 years of age; or
> **(3)** production of child pornography (as defined in section 2256(8)).[2]

18 U.S.C. § 2423(f).

---

[2] There is no allegation that Mr. Sebastian produced child pornography.

The first definition concerns a "sexual act," as defined by section 2246, with a minor, that would be in violation of chapter 109A (addressing sexual abuse). Section 2246(2) in turn defines a "sexual act" in four different ways:

**(2)** the term "sexual act" means--

**(A)** contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight;
**(B)** contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus;
**(C)** the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; or
**(D)** the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person;

18 U.S.C. § 2246(2).

Mr. Sebastian is alleged to have engaged each of the minors in giving him massages that included them masturbating his penis. *See* Complaint Affidavit at 2. This conduct does not fit any of the above definitions of a "sexual act."

The second definition of "illicit sexual conduct" under section 2423(f) pertains to a "commercial sex act." Although the definition refers to section 1591, not section 2246, nothing in section 1591 limits or excludes the definitions provided under 2246. Section 1591(e)(3) states only that a "commercial sex act" is "any *sex act*, on account of which anything of value is given to or received by any person." 18 U.S.C. § 1591(e)(3) (emphasis added). The terms "sexual act" and "sex act" have no discernable difference. The only added component in a "commercial sex act" is the commercial nature of the act – the exchange of value. Otherwise, the act itself is the same. And here, Mr. Sebastian's alleged conduct was not a "sexual act," so neither should it be considered a "commercial sex act."

The Ninth Circuit rejected this argument in an unpublished decision, *United States v. Bazar*, 747 Fed. Appx. 454 (9th Cir. 2018), stating, "We reject Bazar's argument that we should import the narrower definition of 'sexual act' from 18 U.S.C. § 2246(2) into section 1591(a). Congress expressly limited the definitions in section 2246 to its chapter, which does not include section 1591, and chose not to cross reference section 2246 in section 1591." *Id.* at 456; *accord United States v. Taylor*, 44 F.4th 779, 789 (8th Cir. 2022) (adopting this reasoning and rejecting defendant's sufficiency of the evidence claim). The court disagreed with the defendant's argument that "the term 'commercial sex act' is limited to sexual intercourse for money," deciding instead that "the 'ordinary' and 'natural' meaning of 'any sex act' includes happy-ending massages." *Bazar*, 747 Fed. Appx. at 456. The court reasoned that the "Supreme Court normally construes undefined words in a statute in accord with their ordinary and natural meaning, which can often be discerned by reference to a dictionary." *Id.* (citing *Benko v. Quality Loan Serv. Corp.*, 789 F.3d 1111, 1118 (9th Cir. 2015)). It rested on definitions of "sex act," "sexual act," and "sexual" in the Oxford Dictionary of English and Merriam Webster's Collegiate Dictionary, which provided definitions regarding "activities connected with physical attraction or intimate physical contact" and "an act performed with another for sexual gratification." *Id.*

This Court should not follow the Ninth Circuit's non-binding authority and flawed reasoning. Although the court was correct that Congress expressly did not cite section 2246 in its definition of a "commercial sex act" and turned to section 1591 instead, the fact remains that section 1591 does not define a "sex act," and nothing in section 1591 precludes application of the principles defined in section 2246. *See* 18 U.S.C. § 1591(e)(3). As for the dictionary definitions, Mr. Sebastian submits that the Oxford English Dictionary defines "sex act" as "a sexual action or activity, especially the act of sexual intercourse." Oxford English Dictionary, 2022, Oxford

University                Press,                *available*                *at*
https://www.oed.com/view/Entry/176989?redirectedFrom=sex+act#eid23487111. The Court
need not turn to a dictionary, however, where Congress already expressed the parameters of a
"sexual act" in section 2246, which do not conflict with the definition provided of a "commercial
sex act" under section 1591.

In the alternative, the Court should find that the definition of a "commercial sex act" under
section 1591(e)(3) is void for vagueness and does not place Mr. Sebastian on sufficient notice of
the charge against him so that he may prepare a defense for trial. "The Fifth Amendment
guarantees every citizen the right to due process. Stemming from this guarantee is the concept that
vague statutes are void." *United States v. Washam*, 312 F.3d 926, 929 (8th Cir. 2002). A statute is
void for vagueness if it "fails to provide a person of ordinary intelligence of fair notice of what is
prohibited" or "is so standardless that it authorizes or encourages seriously discriminatory
enforcement." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18 (2010) (internal quotation
marks and citation omitted).

While section 1591(e)(3) explains that the "commercial" component of a "commercial sex
act" is the exchange of "value . . . by any person," it does not sufficiently explain what a "sex act"
is. The definition simply repeats the phrase: "commercial *sex act*" is "any *sex act*." 18 U.S.C.
§ 1591(e)(3). This leaves too much to the imagination and allows prosecution for a wide range of
behaviors, such as explicit modeling or acting, to come under its purview absent express
congressional intent. Specific to Mr. Sebastian's case, he would need to recall and examine any
contact with the alleged victims that could fall under the statute, without guidance as to what that
would entail. This is violative of his right to due process and a fair trial. The indictment should be
dismissed.

## IV.      Conclusion

The indictment should be dismissed because (1) it is multiplicitous; (2) Congress does not have authority to regulate conduct occurring wholly within another country, which does not substantially affect foreign commerce; and (3) the alleged conduct does not constitute a "commercial sex act," or in the alternative, the definition of that term is void for vagueness.

Respectfully submitted,

/s/ *Cara McNamara*
Cara McNamara
AK Bar # 0511088

/s/ *Forest O'Neill-Greenberg*
Forest O'Neill-Greenberg
B.B.O. # 674760

/s/ *Samia Hossain*
Samia Hossain
B.B.O. # 696329

Federal Public Defender Office
51 Sleeper Street, 5th Floor
Boston, MA 02210
(617) 223-8061
cara_mcnamara@fd.org
forest_oneill-greenberg@fd.org
samia_hossain@fd.org

Date: November 22, 2022

<u>**CERTIFICATE OF SERVICE**</u>

I, Samia Hossain, hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on November 22, 2022.

/s/ *Samia Hossain*
Samia Hossain